IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KEE GOOSTREE, as representative of the ESTATE OF ALTON H. PADGETT, and JEAN G. PADGETT,<br><br>    Plaintiffs,<br><br>v.<br><br>LIBERTY NATIONAL LIFE INSURANCE COMPANY and ROBERT D. BICE,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 1:19-CV-00071-KOB<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Plaintiffs filed a putative class action consisting of people located in Alabama who purchased or owned life insurance policies through Defendants for which their premiums paid exceed their death benefits payable. They sued Liberty National Life Insurance Company and Liberty National insurance agent Robert D. Bice for various claims relating to Defendants allegedly recommending and selling insurance policies to Plaintiffs that were inappropriate for Plaintiffs' needs. On January 11, 2019, Defendants removed this insurance dispute action to federal court. (Doc. 1). In their notice of removal, Defendants alleged that the court has diversity of citizenship jurisdiction over the case and that the court should disregard the citizenship of Mr. Bice, the insurance agent, because they asserted that Plaintiffs fraudulently joined Mr. Bice as a defendant. Plaintiffs did not seek remand.

Subsequently, Liberty National and Mr. Bice each filed a motion to dismiss. (Docs. 3–4). Mr. Bice's motion to dismiss argues essentially what Defendants noted in their notice of removal regarding fraudulent joinder: Plaintiffs' claims against Mr. Bice are barred by Alabama Code

1

§ 6-5-462 and Plaintiffs failed to state a claim as a matter of law against Mr. Bice, the non-diverse Defendant.

Before this case can proceed, the court must ensure that it has subject matter jurisdiction. *See Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) ("[W]ithout jurisdiction the court cannot proceed at all in any cause. . . . [W]hen [jurisdiction] ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case."). Although Plaintiffs did not move for remand, the court must *sua sponte* determine whether it has subject matter jurisdiction. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) ("Indeed, [the law] is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking.").

To travel in federal court on diversity of citizenship jurisdiction, the removing party must prove two elements: (1) all plaintiffs are completely diverse from all defendants, and (2) the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Plaintiffs do not dispute that Liberty National is diverse from all Plaintiffs or that the amount in controversy exceeds $75,000. But Mr. Bice and Plaintiffs are all citizens of Alabama. Unless Plaintiffs fraudulently joined Mr. Bice, his citizenship and presence in this case will defeat diversity jurisdiction.[1]

Defendants argue that Plaintiffs fraudulently joined Mr. Bice to defeat jurisdiction. "When a plaintiff names a non-diverse defendant solely . . . to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant . . . ." *Henderson v. Wash. Nat'l Ins.*, 454 F.3d 1278, 1281 (11th Cir. 2006). And one way in which a defendant can prove fraudulent joinder is by demonstrating that under "no possibility [can] plaintiff establish a cause of action against the resident defendant." *Id.* (quoting *Crowne v.*

---

[1] Defendants also allege that this court has jurisdiction over this case under the Class Action Fairness Act, which is not at issue in this Memorandum Opinion.

2

*Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)). So, whether Plaintiffs have failed to state a claim upon which relief can be granted against Mr. Bice and whether Plaintiffs fraudulently joined Mr. Bice to defeat subject matter jurisdiction are related inquiries.

The court ordered Plaintiffs to show cause why Plaintiffs stated a claim against Mr. Bice. (Doc. 9). The court did not order briefing on whether jurisdiction exists under CAFA because the court first wanted to explore diversity of citizenship jurisdiction. Plaintiffs filed their response on February 11, 2019. (Doc. 12). Liberty Mutual then sought permission from the court to file a reply brief, (doc. 14), which the court allowed as to both Defendants. (Doc. 15). On February 28, 2019, Mr. Bice and Liberty Mutual each filed a reply brief. (Docs. 17–18). The parties have fully briefed the issue of diversity of citizenship jurisdiction, which is now ripe for review.

**I. Background**

Plaintiffs allege in this putative class action that Liberty National operates an unlawful scheme to sell low face value life insurance policies to low income consumers. Specifically, they allege that "Liberty National targeted consumers who are under-educated and/or unsophisticated with respect to insurance and related financial dealings, the language of the policies, and methods of determining premium payments whereby the premiums paid on such policies far exceeded the policy's face value." (Doc. 1-1 at 8). The policies supposedly require Plaintiffs to pay premiums that exceed the death benefit payable pursuant to the policy. According to Plaintiffs, the policies generated profits at no risk to Liberty National and its agents, but provided no economic benefit to Plaintiffs.

Mr. Alton Padgett and Mrs. Jean Padgett are the named Plaintiffs in this lawsuit. Mr. Padgett died in May 2018 at the age of 88, and Mrs. Padgett is now 82 years old. Mr. Bice has been their insurance agent since 1985. According to the complaint, Mr. Bice "knew and

understood the Plaintiffs' age, employment, financial status, lack of dependents, and station in life." (Doc. 1-1 at 11). For example, Mr. Bice knew that Mrs. Padgett was retired and receiving social security since 1998, and Mr. Padgett was earning less than $16,000 annually through his job at Piggly Wiggly. Mr. Bice recommended and induced the Padgetts into purchasing multiple insurance policies, for which the premiums collectively exceeded $14,000 per year. Mr. Bice continuously represented to the Padgetts that "such additional insurance was financially appropriate and beneficial to Plaintiffs, consistent with Plaintiffs' profile, needs and financial situation" despite his knowledge that "each successive policy would cost more in premiums than the death benefit payable under the policy." (*Id.* at 11–12).

The Padgetts allege that their "agreement [with Mr. Bice and Liberty National] contemplated an implied covenant of good faith and fair dealing." (Doc. 1-1 at 12). As of 2015, the Padgetts purchased 14 life insurance policies for which they paid more than $14,000 per year in premiums for a collective death benefit of $134,000 in reliance on Mr. Bice's recommendations. The initial policy Mr. Padgett bought from Mr. Bice in 1988 had a death benefit of $6,701. (Doc. 1-3 at 1; Doc. 1-5 at 1). The initial policy for Mrs. Padgett from Mr. Bice in 1989 had a death benefit of $7,816. (Doc. 1-3 at 1).[2] In 2017, Mr. Padgett requested to cash out his insurance policies, which he could no longer afford. Mr. Bice explained that a "cash out" was not permitted, but recommended that the Padgetts convert their policies into a "Reduced, Paid Up" policy. Under this "Reduced, Paid Up" policy, the Padgetts were no longer

---

[2] Prior to either of these policies, the Padgetts purchased a joint life insurance policy from Liberty National in 1972, with a death benefit of $10,000, but that policy was before the Padgetts began working with Mr. Bice in 1985. (Doc. 1-3 at 1). To this court's knowledge, the 1972 policy is not at issue because the allegations in Plaintiffs' complaint begin in 1985. (Doc. 1-1 at 11).

obligated to pay premiums, but the total death benefit payable under the policies was reduced to $45,000. By this time, the Padgetts had paid more than $188,000 in premiums on the policies.

On October 19, 2018, the Padgetts filed this suit individually and on behalf of all others similarly situated against Liberty National and Mr. Bice in the Circuit Court of Talladega County, Alabama. The complaint alleges eight claims: breach of contract; breach of implied covenant of good faith and fair dealing; conversion; rescission; unjust enrichment; declaratory and injunctive relief; negligence, willfulness, and/or wantonness in the recommendation and sale of life insurance policies; and negligent and/or wanton training and supervision. Four of these claims appear to be against Mr. Bice: breach of contract; breach of implied covenant of good faith and fair dealing; declaratory and injunctive relief; and negligence, willfulness, and/or wantonness in the recommendation and sale of life insurance policies.

On January 11, 2019, Liberty National removed this case to federal court. Mr. Bice joined in the removal. Liberty National asserts that this court has diversity of citizenship jurisdiction over this case. Liberty National is a citizen of Texas and Nebraska, Mr. Bice is a citizen of Alabama, and Plaintiffs are citizens of Alabama. Liberty National alleges that Plaintiffs fraudulently joined Mr. Bice, and so the court should disregard his citizenship when evaluating jurisdiction.

On January 15, 2019, Mr. Bice filed his motion to dismiss, contending that Plaintiffs had failed to state a claim against him.

**II. Standard of Review**

A federal court may properly assert diversity jurisdiction over a case in which the non-diverse defendant has been fraudulently joined. *See Henderson v. Washington Nat'l Ins.*, 454 F.3d 1278, 1281 (11th Cir. 2006). "When a plaintiff names a non-diverse defendant solely . . . to

defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant . . . ." *Id.* To prove that a co-defendant was fraudulently joined, a defendant must demonstrate that "(1) there is no possibility that plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). Such a showing must be made by clear and convincing evidence. *See Henderson*, 454 F.3d at 1281.

While a fraudulent joinder inquiry is related to a Federal Rule of Civil Procedure 12(b)(6) inquiry, the court applies different standards in each inquiry. In a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). So to overcome a Rule 12(b)(6) motion to dismiss, the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

But, to defeat a claim for fraudulent joinder, the complaint must merely demonstrate "a possibility of stating a valid cause of action" against the non-diverse defendant. *Stillwell v. Allstate Ins.*, 663 F.3d 1329, 1333 (11th Cir. 2011) (quoting *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440–41 (11th Cir. 1983), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993). And "[i]n making its determination, the district court must evaluate factual allegations in

the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998).

### III. Discussion

The court must determine whether it has subject matter jurisdiction before proceeding with this case. *See Ex parte McCardle*, 74 U.S. (7 Wall.) at 514 ("[W]ithout jurisdiction the court cannot proceed at all in any cause . . . ."). Liberty National asserts two independent grounds for subject matter jurisdiction: diversity of citizenship—by way of fraudulent joinder—and under the Class Action Fairness Act. Mr. Bice subsequently filed a motion to dismiss all claims against him under Rule 12(b)(6). In its Order to Show Cause, the court ordered Plaintiffs to show why Mr. Bice should not be dismissed for fraudulent joinder, but expressly reserved ruling on jurisdiction under CAFA until the court addressed diversity jurisdiction. Because the court must determine whether it has subject matter jurisdiction before considering Mr. Bice's motion to dismiss, the court's analysis must focus on whether the complaint *possibly* states a valid cause of action against Mr. Bice before the court can reach the issue of jurisdiction under CAFA or whether the court must dismiss Mr. Bice pursuant to Rule 12(b)(6).

Liberty National first argues that Plaintiffs cannot assert a claim against Mr. Bice for breach of contract under Count One because Mr. Bice is not a party to any of the insurance contracts between Liberty National and Plaintiffs. Instead, it contends that Mr. Bice is merely a sales agent for Liberty National. Similarly, Mr. Bice contends that an insurance agent cannot be held individually liable for breach of an insurance contract under Alabama law.

Mr. Bice was not a party to any of the insurance contracts—the only parties to the contracts were the Padgetts and Liberty National. And "[i]t is hornbook contract law that someone who is not a party to a contract cannot be bound by the contract." *Ex parte Dickinson*,

7

711 So. 2d 984, 989 (Ala. 1998) (quoting *Lakeshore Drive Recreation Club, Inc. v. U.S. Fid. & Guar. Co.*, 398 So. 2d 278, 284 (Ala. 1981) (Torbert, C.J., dissenting); *see also Clardy v. Royal Ins. of Am.*, 295 So. 2d 58, 60 (Ala. 1986) ("Swierc could not be liable under the fraud or breach of contract causes of action, because Swierc was not a party to any representations made or any oral contract entered into between Royal and Clardy."). And if someone is not a party to a contract, he cannot be held liable for breach of that contract. *See Ligon Furniture Co. v. O.M. Hughes Ins.*, 551 So. 2d 283, 285 (Ala. 1989) (upholding the trial court's granting of summary judgment on a breach of contract claim when the defendants were not parties to the contract).

True, generally, "[a]n agent cannot be held liable for her principal's breach of contract." *Smith v. Equifax Servs., Inc.*, 537 So. 2d 463, 469 (Ala. 1988). This rule also applies to the insurance context; an individual acting only as an agent of the *insurance* company cannot be held liable for the insurance company's breach of contract. *Miller v. Dobbs Mobile Bay*, 661 So. 2d 203, 205 (Ala. 1995); *see Pate v. Rollison Logging Equipment, Inc.*, 628 So. 2d 337, 343 (Ala. 1993) ("Anderson cannot be liable for breach of contract, because he acted as a broker to place the insurance and was not a party.").

In this case, Plaintiffs never allege that Mr. Bice acted in any capacity other than that of Liberty National's agent. The complaint alleges that "The Policy and Class Policies constitute contracts between Plaintiffs and the Class on the one hand, and Defendant on the other." (Doc. 1-1 at 18). The complaint does not specify to which defendant this statement refers, but the court assumes that it refers to Defendant Liberty National because Plaintiffs sought insurance coverage from Liberty National—not from Mr. Bice personally. Further, according to Mr. Padgett's life insurance policies attached as Exhibit B to Defendants' notice of removal, the policy clearly states that "you, your" refers to the owner of the policy, and "we, us, our" refers to Liberty

National. And Mr. Bice did not even sign the contract on behalf of Liberty National; the Secretary of Liberty National signed instead.

In their brief, Plaintiffs appear to conflate their breach of contract claim with their breach of implied covenant of good faith and fair dealing claim. They offer citations to cases holding that an insurance broker or agent can be held liable for failing to procure insurance for a client, and that the agent or broker can be held liable in contract or in tort for such a failure. *See First Ala. Bank v. First State Ins.*, 899 F.2d 1045, 1067 (11th Cir. 1990) ("In Alabama, when an insurance broker fails in the duties he assumes, one can sue him either for breach of contract or in tort." (internal citations omitted)); *Lewis v. Roberts*, 630 So. 2d 355, 357 (Ala. 1993) ("When an insurance agent or broker, with a view to compensation, undertakes to procure insurance for a client and unjustifiably or negligently fails to do so, he becomes liable for any damage resulting therefrom.").

But holding an insurance agent liable for breach of contract for failing to procure insurance differs from holding an insurance agent liable for the alleged excessive premiums for the insurance charged by the insurer. And Plaintiffs never argue that Mr. Bice failed to procure an insurance policy. Instead, they seem to allege that Mr. Bice procured policies unsuitable for Plaintiffs' needs. Plaintiffs' arguments and citations are better suited for arguing that Mr. Bice violated the implied covenant of good faith and fair dealing. And Plaintiffs point to no case where an insurance agent was liable for the insurer's breach of contract.

Because Mr. Bice acted only as an agent of Liberty National in forming the contracts between Liberty National and Plaintiffs and because Alabama law prevents an agent from being held liable for his principal's alleged breach of contract, Plaintiffs have no possibility of asserting a valid breach of contract cause of action against Mr. Bice.

9

Just as in the claim for breach of contract, Liberty National and Mr. Bice contend that Plaintiffs cannot assert a claim against Mr. Bice for breach of the implied covenant of good faith and fair dealing in Count Two because Mr. Bice is not a party to any of the insurance contracts between Liberty National and Plaintiffs.

The court first considers whether an insurance agent owes a duty of fair dealing to the purchaser of insurance. Alabama follows the general rule that insurance agents "generally are not liable for actions other than obtaining insurance coverage for their insureds unless a special relationship has been established between the parties." *Somnus Mattress Corp. v. Hilson*, No. 1170250, 2018 WL 6715777, at *5 (Ala. Dec. 21, 2018) (quoting 3 Steven Plitt et al., *Couch on Insurance* § 46:38 (3d ed. 2011) (footnotes omitted)). Insurance agents and brokers owe a duty—agents to the insurer and brokers to the insured—to "exercise reasonable skill, care, and diligence in effecting coverage" after "the parties have come to an agreement on the procurement of insurance." *Highlands Underwriters Ins. v. Elegante Inns, Inc.*, 361 So. 2d 1060, 1065 (Ala. 1978).

As Plaintiffs point out, "[w]hen the agent or broker has failed in the duty he assumes, the *principal* may sue either for breach of the contract or, in tort, for breach of the duty imposed on the agent or broker." *Id.* (emphasis added). But Liberty National—not Plaintiffs—is the agent's principal in this case. And "absent a special relationship, that duty does not include an affirmative, continuing obligation to inform or advise an insured regarding the availability or sufficiency of insurance coverage." *Somnus Mattress Corp.*, 2018 WL 6715777, at *6 (quoting *Sintros v. Hamon*, 810 A.2d 553, 555 (N.H. 2002)).

Plaintiffs do not argue that Mr. Bice failed to procure insurance. Instead, they contend that the type of insurance he procured was inappropriate for their needs. In other words,

10

Plaintiffs assert that Mr. Bice owed them a duty because of his special relationship with the Padgetts as their longtime trusted insurance agent to ensure that the Padgetts received appropriate life insurance coverage.

Alabama law does not set out the requirements for a special relationship between an insured and an insurance agent. In *Somnus Mattress Corp.*, the Supreme Court of Alabama recently detailed special relationship requirements from other jurisdictions, including Arizona, California, Georgia, Iowa, Michigan, New Hampshire, North Dakota, South Dakota, and Wisconsin. 2018 WL 6715777, at *9–10. In that case, the Supreme Court of Alabama ultimately determined that no special relationship existed because (1) no express agreement existed between the agent and the insured in which the agent voluntarily assumed additional duties; (2) the agent was not paid additional compensation to advise the insured about the adequacy of its insurance coverage; (3) the insured did not claim that it had a "long-established relationship of entrustment" with the agent; and (4) no evidence indicated that the agent held himself out as an expert and that the insured justifiably relied upon that expertise. *Id.* at *10.

Here, Plaintiffs do allege that a special relationship existed between Mr. Bice and the Padgetts. They contend that "by and through this long-term relationship" with Mr. Bice over the 33 years he was their insurance agent, the Padgetts "reposed trust in him regarding their insurance needs." (Doc. 12 at 16). But, no express agreement existed, no additional compensation was paid, and no evidence indicates that Mr. Bice held himself out to the Plaintiffs as an expert.

In *Maloof v. John Hancock Life Insurance Co.*, the Supreme Court of Alabama concluded that no special relationship existed—even though the relationship between the insured and the agent was "cordial and long-standing"—because the insured's testimony indicated that the

insured "did not view [the relationship with the agent] . . . as anything special or outside the typical salesperson-customer relationship." *Maloof v. John Hancock Life Ins.*, 60 So. 3d 263, 274 (Ala. 2010). The court relied on the insured's testimony expressing that the agent "was forever trying to sell [him] policies" and his "perception [that the agent] wanted to sell [him] policies for whatever reason rather than the correct reason." *Id.* So, merely a long-standing relationship is insufficient.

But in *Express Oil Change, LLC v. ANB Insurance Services, Inc.*, this court found that a fiduciary relationship between an insured and an agent did exist when the insured "demonstrated that its executives placed trust and confidence in [the agents]" in developing a health plan and procuring appropriate insurance. 933 F. Supp. 2d 1313, 1352 (N.D. Ala. 2013) (Bowdre, J.). "This type of relationship where [the agents] inspired confidence in [the insured] that they would act in good faith for its interests goes beyond that of a mere insurance agent/customer relationship like in *Maloof*." *Id.*

Unlike *Maloof* and *Express Oil Change*, this case is not in the summary judgment phase. Plaintiffs are not required to present evidence of a special relationship; they need only state a claim against Mr. Bice, which in this case, includes alleging a special relationship. And because the court is considering whether Plaintiffs fraudulently joined Mr. Bice, and not whether Plaintiffs failed to state a claim against Mr. Bice pursuant to Rule 12(b)(6), the court must determine only whether *a possibility exists* that Plaintiffs stated a claim against Mr. Bice. And the court cannot say with certainty that no Alabama state court would find that a special relationship exists between Mr. Bice and Plaintiffs. So, because the court finds that a possibility exists that Plaintiffs stated a claim against Mr. Bice for breach of duty of fair dealing because of

an alleged special relationship, the court determines that Plaintiffs did not fraudulently join Mr. Bice.

## IV. Conclusion

For the reasons discussed above, the court finds that Plaintiffs did not fraudulently join Mr. Bice in this action. Thus, the court does not have diversity of citizenship jurisdiction.

Before this case can proceed in federal court, the court must determine whether it has subject matter jurisdiction under CAFA. Because the court has not provided the parties an opportunity to brief this issue, the court will defer ruling on whether it has jurisdiction pursuant to CAFA until the parties have such an opportunity. The court will order the parties to brief whether jurisdiction exists pursuant to CAFA by separate order.

**DONE** and **ORDERED** this 17th day of June, 2019.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE