FILED
2019 Jul-25 PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KEE GOOSTREE, as representative of the ESTATE OF ALTON H. PADGETT, and JEAN G. PADGETT, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| LIBERTY NATIONAL LIFE INSURANCE COMPANY and ROBERT D. BICE, | ) ) ) |
| Defendants. | ) |

Case No. 1:19-CV-00071-KOB

**MEMORANDUM OPINION**

This matter comes before the court on Defendant Liberty National Life Insurance Company's "Joint Motion to Alter or Amend," (doc. 22), and Liberty National and Defendant Robert D. Bice's "Corrected Joint Motion to Alter or Amend," (doc. 23). Both motions address the court's recent Memorandum Opinion and Order finding that Plaintiffs did not fraudulently join Mr. Bice.

On June 17, 2019, this court entered a Memorandum Opinion and Order in which it held that Plaintiffs did not fraudulently join Mr. Bice because the court found a possibility existed that Plaintiffs stated a claim against Mr. Bice for breach of the duty of good faith and fair dealing. (Docs. 19–20). Specifically, the court found that Plaintiffs may have stated a claim against Mr. Bice for breach of duty of good faith and fair dealing because the Plaintiffs alleged they had a special relationship with Mr. Bice, which created a duty toward Plaintiffs. (Doc. 19 at 11–12).

Defendants now move to amend the court's order under Federal Rule of Civil Procedure 59(e) because they allege the court committed a clear error in its ruling. Defendants raise

1

multiple arguments why the court erred, including that the allegations of a special relationship came from Plaintiffs' jurisdictional response brief, not Plaintiffs' complaint. The court will now consider Defendants' motions to amend its June 17 Order. (Docs. 22–23).

**I. Background**

Plaintiffs allege in this putative class action that Liberty National operates an unlawful scheme to sell low face value life insurance policies to low income consumers. Specifically, they allege that "Liberty National targeted consumers who are under-educated and/or unsophisticated with respect to insurance and related financial dealings, the language of the policies, and methods of determining premium payments whereby the premiums paid on such policies far exceeded the policy's face value." (Doc. 1-1 at 8). The policies supposedly require Plaintiffs to pay premiums that exceed the death benefit payable pursuant to the policy. According to Plaintiffs, the policies generated profits at no risk to Liberty National and its agents, but provided no economic benefit to Plaintiffs.

The Estate of Mr. Alton Padgett and Mrs. Jean Padgett are the named Plaintiffs in this lawsuit. Mr. Padgett died in May 2018 at the age of 88, and Mrs. Padgett is now 82 years old. Mr. Bice has been their insurance agent since 1985. According to the complaint, Mr. Bice "knew and understood the Plaintiffs' age, employment, financial status, lack of dependents, and station in life." (Doc. 1-1 at 11). For example, Mr. Bice knew that Mrs. Padgett was retired and receiving social security since 1998, and Mr. Padgett was earning less than $16,000 annually through his job at Piggly Wiggly. Mr. Bice recommended and induced the Padgetts into purchasing multiple insurance policies, for which the premiums collectively exceeded $14,000 per year. Mr. Bice continuously represented to the Padgetts that "such additional insurance was financially appropriate and beneficial to Plaintiffs, consistent with Plaintiffs' profile, needs and

financial situation" despite his knowledge that "each successive policy would cost more in premiums than the death benefit payable under the policy." (*Id.* at 11–12).

The Padgetts allege that their "agreement [with Mr. Bice and Liberty National] contemplated an implied covenant of good faith and fair dealing." (Doc. 1-1 at 12). As of 2015, the Padgetts purchased 14 life insurance policies for which they paid more than $14,000 per year in premiums for a collective death benefit of $134,000 in reliance on Mr. Bice's recommendations. The initial policy Mr. Padgett bought from Mr. Bice in 1988 had a death benefit of $6,701. (Doc. 1-3 at 1; Doc. 1-5 at 1). The initial policy for Mrs. Padgett from Mr. Bice in 1989 had a death benefit of $7,816. (Doc. 1-3 at 1).[1] In 2017, Mr. Padgett requested to cash out his insurance policies, which he could no longer afford. Mr. Bice explained that a "cash out" was not permitted, but recommended that the Padgetts convert their policies into a "Reduced, Paid Up" policy. Under this "Reduced, Paid Up" policy, the Padgetts were no longer obligated to pay premiums, but the total death benefit payable under the policies was reduced to $45,000. By this time, the Padgetts had paid more than $188,000 in premiums on the policies.

On October 19, 2018, the Padgetts filed this suit individually and on behalf of all others similarly situated against Liberty National and Mr. Bice in the Circuit Court of Talladega County, Alabama. The complaint alleges eight claims: breach of contract; breach of implied covenant of good faith and fair dealing; conversion; rescission; unjust enrichment; declaratory and injunctive relief; negligence, willfulness, and/or wantonness in the recommendation and sale of life insurance policies; and negligent and/or wanton training and supervision. Four of these

---

[1] Prior to either of these policies, the Padgetts purchased a joint life insurance policy from Liberty National in 1972, with a death benefit of $10,000, but that policy was before the Padgetts began working with Mr. Bice in 1985. (Doc. 1-3 at 1). To this court's knowledge, the 1972 policy is not at issue because the allegations in Plaintiffs' complaint begin in 1985. (Doc. 1-1 at 11).

3

claims appear to be against Mr. Bice: breach of contract; breach of implied covenant of good faith and fair dealing; declaratory and injunctive relief; and negligence, willfulness, and/or wantonness in the recommendation and sale of life insurance policies.

On January 11, 2019, Liberty National removed this case to federal court. Mr. Bice joined in the removal. Liberty National asserts that this court has diversity of citizenship jurisdiction over this case. Liberty National is a citizen of Texas and Nebraska, Mr. Bice is a citizen of Alabama, and Plaintiffs are citizens of Alabama. Liberty National alleges that Plaintiffs fraudulently joined Mr. Bice, and so the court should disregard his citizenship when evaluating jurisdiction.

On January 15, 2019, Mr. Bice filed his motion to dismiss, contending that Plaintiffs had failed to state a claim against him. Because the court was unsure if it had subject matter jurisdiction, it ordered Plaintiffs to show cause why Mr. Bice should not be dismissed. (Doc. 9). On June 17, 2019, this court entered a Memorandum Opinion and Order finding that Plaintiffs did not fraudulently join Mr. Bice because a possibility existed that Plaintiffs stated a claim for breach of the duty of good faith and fair dealing against Mr. Bice. (Docs. 19–20). Defendants now move for reconsideration of the June 17 Order.

**II. Standard of Review**

Whether to grant a motion to reconsider under Federal Rule of Civil Procedure 59(e) or 60(b) is within the discretion of the trial court. *See Smith v. Casey*, 741 F.3d 1236, 1241 (11th Cir. 2014). A motion to reconsider "must demonstrate why the court should reconsider its prior decision and 'set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.'" *Fid. & Deposit of Md. v. Am. Consertech, Inc.*, No. 06-0338-CG-M, 2008

WL 4080270, at *1 (S.D. Ala. Aug. 28, 2008) (quoting *Cover v. Wal-Mart Stores, Inc.*, 148 F.R.D. 294 (M.D. Fla. 1993)).

Three grounds justify reconsideration of an order: when a party submits evidence of (1) "an intervening change in controlling law," (2) "the availability of new evidence," or (3) "the need to correct clear error or manifest injustice." *Wallace v. Holder*, 846 F. Supp. 2d 1245, 1248 (N.D. Ala. 2012) (quoting *Summit Med. Ctr. of Ala., Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003)). "[R]econsideration of an order is an extraordinary remedy and is employed sparingly." *Rueter v. Merrill Lynce, Pierce, Fenner & Smith, Inc.*, 440 F. Supp. 2d 1256, 1267–68 (N.D. Ala. 2006). Motions for reconsideration should not be a "knee-jerk reaction to an adverse ruling." *Id.* (quoting *Summit Med. Ctr. of Ala., Inc.*, 284 F. Supp. 2d at 1355).

### III. Discussion

Defendants filed two separate motions to amend the order. Only Liberty National filed the first motion, despite the title as a "joint" motion. (Doc. 22). Liberty National and Mr. Bice subsequently filed the corrected joint motion. (Doc. 23). Because the motions are otherwise identical in substance, the court will FIND AS MOOT the original motion to amend, (doc. 22), and will only consider the merits of the corrected motion to amend, (doc. 23).

In their corrected motion, Defendants contend that the court committed clear error in its order finding that a possibility existed that Plaintiffs alleged a claim against Mr. Bice for breach of duty of fair dealing because of an alleged special relationship. As one of their arguments for reconsideration, Defendants maintain that the court relied upon allegations in Plaintiffs' jurisdictional response brief to find a special relationship, when the court should have been limited to Plaintiffs' pleadings in its complaint.

When considering subject matter jurisdiction in a removal action, "the status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal, since the defendant must file his petition before the time for answer or forever lose his right to remove." *St. Paul Mercury Indem. v. Red Cab Co.*, 303 U.S. 283, 291 (1938); *see also Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998) ("The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal . . . .").

In the June 17 Order, this court found that Plaintiffs alleged a special relationship existed because Plaintiffs contended that "'by and through this long-term relationship' with Mr. Bice over the 33 years he was their insurance agent, the Padgetts 'reposed trust in him regarding their insurance needs.'" (Doc. 19 at 11 (quoting Doc. 12 at 16)). In that statement, the court quoted Plaintiffs' argument in their jurisdictional response brief, (doc. 12), erroneously expecting the factual statements to accurately reflect those in their complaint. But the *complaint* does not allege either a long-term relationship or that the Padgetts reposed trust in Mr. Bice. So, the court committed clear error when it relied on allegations outside of Plaintiffs' pleadings at the time of the removal, despite the Supreme Court and Eleventh Circuit precedent to the contrary. *See St. Paul Mercury Indem.*, 303 U.S. at 291; *Pacheco de Perez*, 139 F.3d at 1380. Therefore, the court must GRANT Defendants' motion to amend. (Doc. 23).

The court will now reconsider whether Plaintiffs fraudulently joined Mr. Bice. To prove that a co-defendant was fraudulently joined, a defendant must demonstrate that "(1) there is no possibility that plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court."

6

*Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). Such a showing must be made by clear and convincing evidence. *See Henderson*, 454 F.3d at 1281.

Liberty National and Mr. Bice contend that Plaintiffs cannot assert a claim against Mr. Bice for breach of the implied covenant of good faith and fair dealing in Count Two because Mr. Bice is not a party to any of the insurance contracts between Liberty National and Plaintiffs. In its June 17 Memorandum Opinion, the court found that a possibility existed that Plaintiffs alleged a claim for breach of the duty of good faith and fair dealing against Mr. Bice specifically because Plaintiffs had alleged a special relationship between them and Mr. Bice. (Doc. 19 at 11–12). Absent a special relationship, Mr. Bice owed Plaintiffs no duty. *Somnus Mattress Corp. v. Hilson*, No. 1170250, 2018 WL 6715777, at *6 (Ala. Dec. 21, 2018) ("[A]bsent a special relationship, that duty does not include an affirmative, continuing obligation to inform or advise an insured regarding the availability or sufficiency of insurance coverage." (quoting *Sintros v. Hamon*, 810 A.2d 553, 555 (N.H. 2002))).

As stated above, Plaintiffs' complaint fails to provide any allegations of a special relationship. The *only* allegations of a special relationship come from Plaintiffs' jurisdictional response. (Doc. 12). So, because Plaintiffs failed to *plead* a special relationship with Mr. Bice, as an insurance agent for Liberty National, Mr. Bice owes no duty to Plaintiffs. Therefore, Plaintiffs cannot state a claim against Mr. Bice for breach of the duty of good faith and fair dealing.

In its June 17 Memorandum Opinion, the court stopped at this point because it found a possibility existed that Plaintiffs had alleged a claim against Mr. Bice, and so Plaintiffs could not have fraudulently joined Mr. Bice. Because the court now finds the opposite, the court will continue to consider whether a possibility exists that Plaintiffs alleged any other claim against Mr. Bice.

The complaint alleges two additional claims against Mr. Bice, not including Count One for breach of contract that the court previously disposed of in its June 17 order: Count Six for declaratory and injunctive relief; and Count Seven for negligence, willfulness, and/or wantonness in the recommendation and sale of life insurance policies.

In Count Six, Plaintiffs allege that Mr. Bice breached the life insurance policies by "actively solicit[ing] and [selling] life insurance policies to the Plaintiffs and Plaintiff Class with benefits which were illusory," "Defendants sold policies . . . for which there was no need and no tangible economic benefit," and "Defendants sale [sic] of such policies was motivated by pure profit at the expense of Plaintiffs and Plaintiff Class." (Doc. 1-1 at 23). Plaintiffs allege they are without adequate remedies at law, and seek a "declaration of the parties' respective rights and duties under the Policy and Class Policies and request[] the Court to declare the aforementioned conduct of Defendant as unlawful and in material breach of the Policy and Class Policies." (*Id.* at 24).

To declare that Mr. Bice's conduct was unlawful and in material breach of the Policy and Class Policies, the court would first have to determine that Mr. Bice was a party to the contract. *See Ex parte Dickinson*, 711 So. 2d 984, 989 (Ala 1998) ("[I]t is hornbook contract law that someone who is not a party to a contract cannot be bound by the contract." (quoting *Lakeshore Drive Recreation Club, Inc. v. U.S. Fid. & Guar. Co.*, 398 So. 2d 278, 284 (Ala. 1981) (Torbert, C.J., dissenting))). And as established regarding Count One, which alleged breach of contract against Mr. Bice, Mr. Bice was not a party to the life insurance contracts and cannot be held liable for breach of the contract because he was not a party. (Doc. 19 at 7–8). Likewise, the court cannot declare that he is in material breach of the life insurance policies and enter declaratory

8

judgment in favor of Plaintiffs because Mr. Bice is not bound by the policies. So, no possibility exists that Plaintiffs alleged the proper facts for a declaratory judgment against Mr. Bice.

In Count Seven, Plaintiffs allege that "Defendants owed duties to properly assess the Plaintiffs' needs and advise as to the suitability of the insurance product recommended," that Defendants failed to exercise reasonable care, and that Defendants acted "negligently, willfully, and/or wantonly [in] solicit[ing], recommend[ing,] and induc[ing] the Plaintiffs to purchase life insurance policies which were not needed, conferred no economic benefit, and were wholly unsuitable for the Plaintiffs' needs." (Doc. 1-1 at 25).

To establish a claim of negligence, the claimant must demonstrate "(1) duty, (2) breach of duty, (3) proximate cause, and (4) injury." *Albert v. Hsu*, 602 So. 2d 895, 897 (Ala. 1992). The Padgetts allege that Mr. Bice owed them a duty to exercise reasonable skill, care, and diligence in effecting insurance coverage, relying on *Highlands Underwriters Insurance v. Elegants Inns, Inc.*, 361 So. 2d 1060 (Ala. 1978). In *Highland Underwriters*, the Supreme Court of Alabama held that "[o]nce the parties have come to an agreement on the procurement of insurance, the agent or broker must exercise reasonable skill, care, and diligence in effecting coverage." *Id.* at 1065. And, if the agent or broker fails to uphold that duty, "the principal may sue either for breach of the contract or, in tort, for breach of the duty imposed on the agent or broker." *Id.*

But the Padgetts improperly rely on *Highlands Underwriters* in this case. As noted by the Alabama Supreme Court in a later case, "[t]he problem with using Highland Underwriters is that it concerns a voluntary duty to procure requested insurance coverage, not a voluntary duty to advise clients about the adequacy of their insurance coverage." *Somnus Mattress Corp.*, 2018 WL 6715777, at *8. As explained in the June 17 Memorandum Opinion, Plaintiffs never argue that Mr. Bice failed to *procure* an insurance policy. (Doc. 19 at 9). Instead, they contend that he

9

procured policies that were unsuitable for their needs. Because Plaintiffs do not allege Mr. Bice failed in his duty to *procure* insurance, *Highlands Underwriters* is inapposite.

And, as this court has already discussed at length, no other duty between the insurance agent and the insured party exists absent either a contract between the parties or a special relationship between the parties. Here, no contract existed between Mr. Bice and the Padgetts, and the Padgetts have failed to plead in the complaint a special relationship existed. So, Plaintiffs have not sufficiently pled that Mr. Bice had a duty to the Padgetts. Therefore, no possibility exists that Plaintiffs stated a claim for negligence, wantonness, and/or willfulness against Mr. Bice.

Because no possibility exists that Plaintiffs stated a claim against Mr. Bice, the court finds that Plaintiffs fraudulently joined Mr. Bice. So, the court will ignore Mr. Bice in determining whether it has diversity of citizenship jurisdiction. As previously explained, Mr. Bice defeated diversity because he and Plaintiffs are citizens of Alabama. So, this court does have diversity of citizenship jurisdiction over this case.

In the interest of ensuring that this court has subject matter jurisdiction, the court will also now consider the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), as an alternative means of subject matter jurisdiction. CAFA extends federal jurisdiction to cases in which the amount in controversy exceeds $5,000,000 and is a class action in which

> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant;
> (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or
> (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

28 U.S.C. § 1332(d)(2).

Plaintiffs filed this case as a putative class action in state court under Alabama Rule of Civil Procedure 23, in which the class includes

> [a]ll persons located in the State of Alabama who own or owned a life insurance policy issued or administered by Defendants, or their predecessors in interest, the terms of which provide or provided for a death benefit payable which is less than the premiums paid by the insured.

(Doc. 1-1 at 14).

In this case, Plaintiffs do not allege a certain amount in controversy. So Defendants "must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the . . . jurisdictional requirement." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). But the court may also find the jurisdictional requirement for the amount in controversy has been met when the amount is "'facially apparent' from the pleading itself." *Roe v. Michelin*, 613 F.3d 1058, 1061 (11th Cir. 2010) (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010)).

Plaintiffs allege that "[t]he persons who fall within the Class number in at least the hundreds, and most likely thousands." (Doc. 1-1 at 15). They also allege that the Padgetts' claims are typical of the class. The suit challenges the solicitation of life insurance policies in which the premiums paid exceed the face value of the policy and seeks—among other relief, including punitive damages—"a return of all premiums paid thereunder." (*Id.* at 22). The Padgetts allegedly paid more than $188,000 in premiums since 1995. (*Id.* at 13). So, the court conservatively estimates that the Padgetts' amount in controversy is $188,000. But the calculation does not end here, because "the claims of the individual class members shall be aggregated to determine whether the amount in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(6). Using the low end of Plaintiffs' class size, the court

11

multiplies 100 putative class members by the $188,000 sought by the Padgetts, whose claims are supposedly typical of the class. Under the court's calculation, the approximate amount in controversy is $18,800,000, which exceeds the $5,000,000 jurisdictional requirement.

Under subsection (d)(2)(A), diversity is met if "any member of a class of plaintiffs is a citizen of a State different from any defendant." In this case, Jean Padgett, a member of a class of plaintiffs, is a citizen of Alabama. (Doc. 1 at 3). Liberty National, one defendant, is a citizen of Nebraska and Texas. (*Id.*). So diversity is met under subsection (d)(2)(A). Because this case meets the CAFA amount in controversy and diversity requirements, federal jurisdiction exists.

But § 1332(d) includes various mandatory and permissive exceptions. Under subsection (d)(4),

> A district court shall decline to exercise jurisdiction . . .
> (A)
> (i) over a class in which—
> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
> (II) at least 1 defendant is a defendant—
> (aa) from whom significant relief is sought by members of the plaintiff class;
> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
> (cc) who is a citizen of the State in which the action was originally filed; and
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons . . . .

In other words, this mandatory exception aims to keep local controversies at home.

Once the defendant establishes subject-matter jurisdiction under CAFA, the plaintiff seeking remand bears the burden to demonstrate that the local controversy exception applies. *Evans v. Walter Indus.*, 449 F.3d 1159, 1164 (11th Cir. 2006). The legislative history of CAFA suggests that "Congress intended the local controversy exception to be a narrow on, with all doubts resolved 'in favor of exercising jurisdiction over the case.'" *Id.* at 1163 (quoting S. Rep. No. 109-14, at 42 (2005)).

Plaintiffs first assert that greater than two-thirds of the class members are citizens of Alabama. To support this assertion, Plaintiffs rely on the inference that, because they defined the class as "[a]ll persons located in the State of Alabama who own or owned a life insurance policy issued or administered by Defendants," at least two-thirds of the class maintain Alabama citizenship. (Doc. 26 at 2). In *Evans*, the Eleventh Circuit dealt with a class defined as those with property interests in land located in Alabama adversely affected by a defendant's waste product as well as those who came into contact with the defendant's hazardous waste. 449 F.3d at 1165–66. Despite an affidavit citing that 93.8% of known class members were Alabama citizens, the court held that the plaintiffs failed to prove the class member citizenship requirement largely because their survey lacked information on how the surveyor found the potential class members. *Id.* at 1166.

In this case, Plaintiffs attached an affidavit from Ms. Goostree, in which she stated that she "reasonably believe[s]" that more than two-thirds of the class members are citizens of Alabama. (Doc. 26-1). The court struck the portion of the affidavit regarding individuals other than Ms. Goostree's parents because Ms. Goostree did not base her statements on personal knowledge. Even if the court considered the affidavit, Plaintiffs fail to provide any proof that the class comprised at least two-thirds Alabama citizens. The plaintiffs ignore that the class also

13

disjunctively includes the "predecessors in interest" of the potential victims, many of whom may not live in Alabama. And, as noted by Plaintiffs, mere residency does not equate to citizenship for jurisdictional purposes. *See Gilbert v. David*, 235 U.S. 561, 568–69 (1915) (holding that domicile determines citizenship). As such, reliance on residence alone to infer citizenship under CAFA is misplaced.

Plaintiffs also fail to provide evidence that Mr. Bice, assuming he was not fraudulently joined, is a defendant from whom significant relief is sought by members of the class. Whether a class seeks significant relief from a particular defendant requires the court to consider (1) how many members of the class were harmed by the specific defendant's actions, (2) a comparison of relief sought between all defendants, and (3) each defendant's ability to pay the judgment. *Evans*, 449 F.3d at 1167 (citing *Robinson v. Cheetah Transp.*, No. 06-0005, 2006 WL 468820 (W.D. La. Feb. 27, 2006)). Plaintiffs rely on little more than the fact that Mr. Bice sold the policy to the Padgetts and, according to Ms. Goostree, told them that he had hundreds of Liberty National insured clients to show that Mr. Bice is a significant defendant. Plaintiffs provide no evidence indicating the proportion of class members to whom Bice sold these insurance policies and no evidence of Mr. Bice's proportional liability compared to that of Liberty National.

Because Plaintiffs did not demonstrate that two-thirds of the class members are citizens of Alabama and that Mr. Bice is a significant defendant, they fail to establish that the local controversy exception applies. As such, in addition to having diversity of citizenship jurisdiction through fraudulent joinder, the court also has subject matter jurisdiction under CAFA.

## IV. Conclusion

For the reasons discussed above, the court will GRANT Defendants' "Corrected Joint Motion to Alter or Amend," (doc. 23), and will FIND AS MOOT Defendants' "Joint Motion to Alter or Amend," (doc. 22).

On reconsideration, the court finds that Plaintiffs *did* fraudulently join Mr. Bice in this action. And "[I]f fraudulent joinder is established, then the resident defendant is subject to dismissal." *Collins v. Marten Transp., Ltd.*, No. 4:14-CV-0257-VEH, 2014 WL 972245, at *3 (N.D. Ala. Mar. 12, 2014) (citing *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)). So, the court must DISMISS Mr. Bice from this action.

Because Mr. Bice was fraudulently joined and has now been dismissed, the court finds it does have subject matter jurisdiction over the action pursuant to diversity of citizenship jurisdiction. Alternatively, the court also finds that it has subject matter jurisdiction under CAFA.

Because the court will dismiss Mr. Bice, the court will also FIND AS MOOT Mr. Bice's motion to dismiss. (Doc. 4). The court will enter a separate Order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this 25th day of July, 2019.

**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE